UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ETORIA HIGHSMITH,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>Defendant. | Civ. No. 24-10136 (RK)(JBD)<br><br>**MEMORANDUM ORDER** |

Before the Court is plaintiff Etoria Highsmith's request for leave to serve an expert report on valuation and damages out of time. [Dkt. 49.] Highsmith initially designated her public adjuster, William Babst of PB&K Public Adjusters, as both a fact and expert witness to testify regarding his investigation of the insurance claim at issue in this case. Although Babst was previously responsive, Highsmith's counsel is no longer able to get in contact with him. Highsmith therefore seeks leave to serve a damages report from a new expert. Defendant State Farm Fire and Casualty Company ("State Farm") opposes the request. [Dkt. 50.] The Court has carefully considered the parties' submissions and applicable law. For the reasons set forth below, plaintiff's request is denied.

## I. Background

This is an insurance coverage dispute. Pursuant to a residential dwelling policy that State Farm issued, Highsmith submitted a claim for damage to her residence caused by soot originating from an unknown source. *See, e.g.*, [Dkt. 8]

at 1-2. State Farm denied the claim, explaining that its investigation revealed that the soot damage had occurred over time rather than as a one-time occurrence, and therefore was not covered under the policy. *Id.* at 2.

On September 26, 2024, Highsmith initiated this suit against State Farm in the Superior Court of New Jersey, Mercer County. [Dkt. 1] at 8-10. In her complaint, Highsmith alleges that State Farm (1) failed to pay insurance benefits in violation of her policy; and (2) handled her insurance claim in bad faith in violation of its duty of good faith and fair dealing. *Id.* On October 29, 2024, State Farm removed this action to federal court. *Id.* at 1-6. Shortly thereafter, State Farm filed an answer to the complaint, and the Court held an initial scheduling conference on January 16, 2025. [Dkts. 5, 7.] The Court thereafter entered a pretrial scheduling order, and the parties proceeded to fact discovery. [Dkt. 11.]

At the outset of the discovery process, Highsmith designated Babst, her public adjuster, as both a fact and expert witness. [Dkt. 50], Ex. A. Highsmith indicated that, along with several other witnesses, Babst would testify, based on his "firsthand dealings with th[e] claim and the insured" and his "experience and knowledge in the field of insurance losses, construction, and/or related industry," "as to the cause of th[e] loss," "the damages sustained to the property as a result of that cause of loss, the necessary and proper repairs," and "any other facts or knowledge known relating to th[e] loss or [his] expertise." *Id.* Later, in a response to State Farm's interrogatories, Highsmith reiterated that Babst would serve as an expert and would "testify to his inspection and investigation of the subject loss including but not

limited to, the cause of the loss, the necessary and proper repairs as a result of the loss[,] and the policy coverages." *Id.*, Ex. B at 21; *see also id.* at 19 (noting that Babst would "testify as a fact and expert witness as to the adjustment of th[e] claim, the conduct of the carrier, the damages sustained at the property, the cause of those damages, the policy coverages afforded, the necessary and proper[ ] repairs . . . and any other facts or knowledge relating to th[e] loss or [his] expertise"). Given Babst's anticipated role in this case, State Farm pursued discovery regarding his investigation concerning Highsmith's insurance claim. *See, e.g.*, [Dkt. 18] at 8; [Dkt. 28] at 6.

As discovery progressed, relevant materials in Babst's possession became the subject of a discovery dispute. [Dkt. 28] at 6; [Dkt. 31] at 2-3. In a letter filed on February 4, 2026, State Farm complained that plaintiff had not yet produced her public adjuster's files for "two prior losses and insurance claims at her property" or for "the loss/claim that is the subject of this litigation," even though the files were ostensibly within her possession, custody, or control given her designation of Babst as her expert. [Dkt. 28] at 6. In response, plaintiff asserted that she had already "produced the complete adjuster's file for the [claim] at issue in this litigation" and "all [other] documents related to the public adjuster in her possession" and said that the remaining materials were in the possession of PB&K Public Adjusters. [Dkt. 31] at 2. Nevertheless, plaintiff explained that she was willing to "request the files of the public adjuster and produce[] what [wa]s represented to [p]laintiff as the public adjuster's file." *Id.* at 3.

The Court held a telephone status conference on April 14, 2026 to address the dispute. [Dkt. 35.] During the conference and in a resulting written order, the Court directed plaintiff to "produce her public adjuster's files concerning the two prior losses and insurance claims at the subject property," and the dispute appeared to be resolved. [Dkt. 36] at 2. The resolution was short-lived. On May 11, 2026, State Farm filed a letter indicating that plaintiff had failed to produce a copy of Babst's file for the earlier loss at her property, and that plaintiff was "unable and/or unwilling" to produce the missing file. [Dkt. 39.] State Farm reiterated its position in another letter filed May 15, 2026, in which it also indicated that "[p]laintiff's counsel [ ] agreed to produce plaintiff's public adjuster for deposition during expert discovery." [Dkt. 40] at 1.

The Court directed plaintiff to file a letter in response, [Dkt. 41], and on May 22, 2026, plaintiff filed a letter indicating that "[d]espite repeated attempts by [p]laintiff, the public adjuster's office ha[d] been unresponsive to requests for the 2019 claim file," and that "[p]laintiff ha[d] no documents in her possession or control regarding the public adjuster's 2019 claim file." [Dkt. 42] at 1.[1] In an effort to resolve the dispute (again), plaintiff also indicated that she was willing "to drop any and all roofing claims that may be associated with this lawsuit." *Id.* at 2.

Upon review of the parties' submissions, the Court entered an order finding "that plaintiff ha[d] made a reasonable effort to obtain and produce a copy of her

[1] Plaintiff's letter clarified that "there [we]re two public adjuster files at issue: (1) the file for the 2023 claim which is the subject matter of this litigation," which she had produced, and "(2) a prior roof claim from 2019," which was still missing. *Id.*

public adjuster's file for the prior loss at her property"; concluding that plaintiff did not need to "undertake any further efforts to obtain the file at th[at] time"; and permitting State Farm to "subpoena the public adjuster for the file and/or question the public adjuster about the file at the adjuster's upcoming deposition." [Dkt. 43] at 2. The order also directed the parties to file "an appropriate stipulation and proposed order confirming plaintiff's intention to drop any and all roofing claims that may be associated with this lawsuit" and entered a schedule for expert discovery. *Id.* at 1-2. The same order directed that affirmative expert reports be served no later than July 31, 2026; rebuttal expert reports be served no later than August 31, 2026; and all expert discovery be completed no later than September 30, 2026. *Id.* at 1.

On August 7, 2026, plaintiff filed a joint letter on behalf of both parties reporting that fact discovery was complete and that "affirmative expert reports ha[d] been produced in accordance with the Court's most recent scheduling order." [Dkt. 46.] The letter further reported that "[t]he parties d[id] not anticipate any issues which would cause delay, and believe[d] all expert discovery w[ould] be completed by September 30th." *Id.* However, on August 20, 2026, State Farm filed a letter indicating that plaintiff never served an expert report by Babst, and that "plaintiff's counsel ha[d] not provided a date for Mr. Babst's deposition." [Dkt. 47] at 2. The letter also indicated that plaintiff's counsel had communicated to State Farm that he was "having a hard time reaching Mr. Babst" and that he was "not sure what else to do at th[at] point[.]" *Id.* In light of the foregoing, State Farm requested "the Court's assistance in compelling plaintiff to produce Mr. Babst for

deposition prior to the September 30, 2026 deadline for expert depositions," or alternatively, "barring Mr. Babst's appearance at trial." *Id.*

The Court addressed the issue during a telephone status conference on August 24, 2026, during which plaintiff confirmed that counsel had been unable to get in touch with Babst and requested, for the first time, the Court's permission to serve out of time an expert report on valuation/damages by a new expert witness. *See* [Dkt. 48]. In a text order issued following the conference, the Court directed plaintiff to file a letter application seeking relief and set a deadline for State Farm to oppose the request. *Id.*[2] The submissions before the Court followed. [Dkts. 49, 50.]

## II. Legal Standards

Federal Rule of Civil Procedure 16 empowers courts to issue scheduling orders to promote the efficient preparation and presentation of cases. Fed. R. Civ. P. 16; *Newton v. A.C. & S., Inc.*, 918 F.2d 1121, 1126 (3d Cir. 1990). "The purpose of Rule 16 is to provide for judicial control over a case, streamline proceedings, maximize the efficiency of the court system, and actively manage the timetable of case preparation to expedite the speedy and efficient disposition of cases." *Holmes v. Christie*, Civ. No. 16-1434 (MAH), 2023 WL 8016055, at *3 (D.N.J. Nov. 17, 2023) (citation omitted); *see also* Fed. R. Civ. P. 1 (the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and

---

[2] The Court's text order separately extended the deadline for plaintiff to serve a rebuttal expert report concerning causation, granted defendant leave to file a reply expert report on causation, and extended the deadline to complete expert depositions until October 30, 2026. [Dkt. 48.]

proceeding"). "[S]cheduling orders are at the heart of case management," *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d Cir. 1986), and disregard for them "undermines the court's ability to control its docket, disrupts the agreed-upon course of the litigation, and rewards 'the indolent and cavalier.'" *J.G. v. C.M.*, Civ. No. 11-2887 (WJM), 2014 WL 1652793, at *1 (D.N.J. Apr. 23, 2014) (citation omitted).

For these reasons, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *accord Koplove*, 795 F.2d at 18. "The 'good cause' standard is not a low threshold." *J.G.*, 2014 WL 1652793, at *1. To establish good cause, a party seeking to modify a scheduling order must show that compliance with the schedule could not be reasonably met despite its diligent efforts. *Faiella v. Sunbelt Rentals, Inc.*, 341 F.R.D. 553, 558 (D.N.J. 2022). The good cause inquiry thus "focuses on the moving party's burden to show due diligence." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp*, 614 F.3d 57, 84 (3d Cir. 2010). To evaluate diligence, courts assess whether the moving party "possessed, or through reasonable diligence should have possessed, the knowledge necessary" to seek leave from the Court before the deadline expired. *Grasso v. Consol. Rail Corp.*, Civ. No. 12-398 (MAH), 2013 WL 3167761, at *6 (D.N.J. June 20, 2013). Further, "good cause may be satisfied if the movant shows that the delay in filing the motion [ ] stemmed from 'any mistake, excusable neglect or any other factor which might understandably account for failure of counsel to undertake to comply with the Scheduling Order.'" *Phillips v. Grebon*, Civ. No. 04-5590 (GEB), 2006 WL 3069475, at *6 (D.N.J. Oct. 27, 2006) (citation omitted).

"Exclusion of expert reports is a well-established remedy for scheduling order violations where no good cause is shown." *Lammering v. Korn*, Civ. No. 23-00059, 2025 WL 3551726, at *6 (D.V.I. Dec. 11, 2025) (collecting cases); *see also Reckitt Benckiser Inc. v. Tris Pharma, Inc.*, Civ. No. 09-3125 (FLW), 2011 WL 6722707, at *6 (D.N.J. Dec. 21, 2011) ("It is well established that a court has discretion to exclude evidence for a party's failure to adhere to the schedule set by the court."). When determining whether to exclude or preclude expert reports, "many courts [also] turn to the *Pennypack* factors upon finding that a party has failed to demonstrate good cause under Rule 16." *Faiella*, 341 F.R.D. at 563 (collecting cases). The "*Pennypack* factors" are the factors that the Third Circuit has set forth to be considered by courts when determining whether "exclusion of evidence is an appropriate sanction for failure to comply with discovery duties[.]" *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000) (citing *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (referencing the factors in *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977))).

The *Pennypack* factors include "(1) 'the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified' or the excluded evidence would have been offered; (2) 'the ability of that party to cure the prejudice'; (3) the extent to which allowing such witnesses or evidence would 'disrupt the orderly and efficient trial of the case or of other cases in the court'; (4) any 'bad faith or willfulness in failing to comply with the court's order'; and (5) the importance of the excluded evidence." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir.

2012) (quoting *Pennypack,* 559 F.2d at 904-05). "The *Pennypack* analysis is flexible, and exclusion may be warranted even if not all factors support it." *Lammering*, 2025 WL 3551726, at *8 (citations omitted). However, the Court notes that "[t]he importance of the evidence is often the most significant factor." *ZF Meritor*, 696 F.3d at 298 (citations omitted); *see also Pennypack,* 559 F.2d at 905 (the exclusion of experts is an "'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." (cleaned up)).[3]

---

[3] State Farm argues that *Pennypack* does not govern the analysis here. [Dkt. 50] at 10-11. The Court agrees. Several courts within the Third Circuit have held that "*Pennypack* does not excuse noncompliance with a scheduling order because it is a Rule 37 sanctions framework, not a substitute for Rule 16(b)'s diligence requirement," and "that Rule 16, not *Pennypack*, controls when a party violates a scheduling order." *Lammering*, 2025 WL 3551726, at *7 (collecting cases); *accord Arroyo v. New Jersey Transit Rail Operations, Inc.*, Civ. No. 22-4147 (JSA), 2026 WL 2111312, at *4 (D.N.J. July 22, 2026) (the *Pennypack* factors "appl[y] to a request to strike or exclude evidence present in the record, not to extend discovery or engage in discovery beyond the Court's Scheduling Order deadline."); *see also Faiella*, 341 F.R.D. at 559-60. The Court agrees with these cases. Nonetheless, the Court considers the *Pennypack* factors here because plaintiff relies on them, and "because the denial of [p]laintiff['] request may have the practical effect of excluding at trial the testimony of certain experts." *Rowe v. E.I. du Pont de Nemours & Co.*, Civ. No. 06-1810 (AMD), 2010 WL 703210, at *4 (D.N.J. Feb. 24, 2010) (collecting cases); *see also Lammering*, 2025 WL 3551726, at *7 (considering the *Pennypack* factors "in the alternative because [p]laintiff relies on [them]"). The Court emphasizes that it considers the *Pennypack* factors here only insofar as they inform the overall Rule 16 good cause analysis.

## III. Discussion

### A. Rule 16(b)

The operative scheduling order in this case directed the parties to "serve affirmative expert reports no later than July 31, 2026." [Dkt. 43] at 1. Despite this deadline, the instant dispute was not brought to the Court's attention until August 20, 2026. [Dkt. 47.] Thus, to the extent plaintiff now seeks to serve an affirmative expert report out of time, the request falls squarely under Rule 16(b)(4), which requires plaintiff to show good cause to modify the pretrial schedule after her failure to timely serve a damages report.[4]

Plaintiff has failed to demonstrate good cause here. In the first instance, plaintiff "completely fail[ed] to address Rule 16(b)'s 'good cause' standard, and thus, [she] has not carried [her] burden of showing that there is any basis to" modify the amended pretrial scheduling order. *Arroyo v. New Jersey Transit Rail Operations, Inc.*, Civ. No. 22-4147 (JSA), 2026 WL 2111312, at *5 (D.N.J. July 22, 2026). Moreover, the procedural history of this case demonstrates that plaintiff has not been diligent in seeking her requested relief and has no excuse for her delay. Accordingly, there is no good cause to modify the schedule in any event.

---

[4] Plaintiff's letter brief does not explicitly say whether her contemplated expert report would be an affirmative expert report or a rebuttal expert report. Nonetheless, plaintiff bears the burden of proving damages, and it appears that the purpose of her contemplated report is to present the replacement expert's own opinions and analysis on damages rather than respond to the opinions of State Farm's damages expert. Thus, the deadline to serve affirmative expert reports is the relevant deadline.

The Court did not learn until nearly one month *after* the deadline to serve affirmative expert reports that plaintiff could no longer reach her designated expert, Babst—and it was State Farm, not plaintiff, who first raised the issue with the Court. [Dkt. 47.] Further demonstrating her lack of diligence, plaintiff filed a letter on August 7, 2026 (one week after the expert deadline) with no mention of this issue; to the contrary, plaintiff indicated that "affirmative expert reports ha[d] been produced in accordance with" the amended pretrial scheduling order and that "[t]he parties d[id] not anticipate any issues which would cause delay." [Dkt. 46.] Indeed, plaintiff did not specifically request leave to serve an expert report out of time until the August 24, 2026 telephone status conference, when she made the request midstream. Attempting now to justify her belated request, plaintiff contends that she has only "recently been unable to get into contact with [Babst or anyone from his office] . . . [d]espite good faith efforts and diligent attempts." [Dkt. 49] at 1. But plaintiff gives no details on when it became clear that she could no longer contact Babst. Nor does she explain any of the alleged "good faith efforts and diligent attempts," *id.*, she made to contact him or the timeline of those efforts.

Upon the Court's review of the docket, it appears that plaintiff began having trouble getting in touch with Babst as early as May 2026, when she reported that "the public adjuster's office ha[d] been unresponsive to requests for the 2019 claim file." [Dkt. 42] at 1. Even if plaintiff was not certain of Babst's unavailability or non-responsiveness in May 2026, plaintiff designated him as an expert at the outset of this case and should have realized that his unresponsiveness posed a serious issue

as the deadline for affirmative expert reports approached and plaintiff still could not reach him. Under these circumstances, the Court cannot fathom why plaintiff did not raise the issue of Babst's unreachability on or around the July 31, 2026 affirmative expert report deadline at the latest, and plaintiff provides no justifiable explanation. In fact, plaintiff failed to provide any reason for her belated request in her letter brief, or any factual support for her assertion that she made diligent efforts to get in touch with Babst or his company.

In these circumstances, the Court concludes that plaintiff has not demonstrated good cause to modify the schedule in this case. Her request to serve an expert report on valuation and damages out of time is therefore denied. *See Arroyo*, 2026 WL 2111312, at *3-5 (no good cause where "deposition dispute was percolating apparently as early as February and March 2026," but was not raised with the Court until July 2026 and plaintiff failed to even attempt to secure deposition in issue until after the close of fact discovery and seven months after he became aware of deponent target); *Kongtcheu v. Hosp. for Special Surgery*, Civ. No. 13-1854 (JBC), 2015 WL 6737019, at *2 (D.N.J. Nov. 2, 2015) (no good cause where plaintiff "failed to provide any satisfactory explanation for [their] delay").

**B. The *Pennypack* Factors**

The Court's consideration of the *Pennypack* factors confirms that plaintiff has not shown good cause to permit her to serve an expert report out of time. As noted, the *Pennypack* factors include "(1) 'the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified' or the excluded evidence

would have been offered; (2) 'the ability of that party to cure the prejudice'; (3) the extent to which allowing such witnesses or evidence would 'disrupt the orderly and efficient trial of the case or of other cases in the court'; (4) any 'bad faith or willfulness in failing to comply with the court's order'; and (5) the importance of the excluded evidence." *ZF Meritor*, 696 F.3d at 298 (quoting *Pennypack,* 559 F.2d at 904-05). The Court addresses each of these factors in turn.

First, State Farm will suffer prejudice if the Court permits plaintiff to produce a new damages report at this juncture. Expert discovery has now closed, and State Farm would likely need to depose plaintiff's new expert, serve a rebuttal expert report, and potentially revise its existing expert reports all out of time. "These particular sources of prejudice must be viewed in conjunction with the more general expenses a party incurs due to additional delays and the prolonging of a litigation that has been percolating in federal court for just shy of two years already." *Webb v. Tahsin Indus. Corp.*, Civ. No. 14-01499, 2016 WL 454821, at *6 (M.D. Pa. Feb. 5, 2016).[5] Indeed, courts routinely "recognize that when scheduling orders are violated, 'an opposing party is often prejudiced by the ensuing delay and resultant expense.'" *Lammering*, 2025 WL 3551726, at *8 (citations omitted). The prejudice to State Farm here "is therefore direct, predictable, and significant." *Id.*[6]

---

[5] As far as the Court is aware, plaintiff still has not identified a proposed replacement expert, so State Farm cannot yet prepare and assess the expert's qualifications and opinions which could protract this issue further.

[6] Although this consequence does not flow directly from plaintiff's request to serve a belated expert report, the Court notes that Babst's unavailability also prejudices State Farm more generally. Defendants and the Court relied on plaintiff's assurance that Babst would be available for deposition in resolving the

Second, the Court could mitigate some of the prejudicial effect by permitting State Farm additional time to submit another expert report in response to plaintiff's report, revise or supplement its existing expert reports, and to depose plaintiff's replacement witness. "Nonetheless, defendants would have to bear the burden and expense of taking additional discovery and providing a new expert report," and "[t]he litigation would [ ] be [ ] delayed." *Virginia St. Fidelco, L.L.C. v. Orbis Prods. Corp.*, Civ. No. 11-2057 (KM), 2018 WL 1399304, at *3 (D.N.J. Mar. 20, 2018). Thus, the Court concludes that the second *Pennypack* factor is, at most, neutral.

Third, with respect to the risk of disrupting the orderly progress of the case, as discussed above, affirmative expert reports were due July 31, 2026. [Dkt. 43] at 1. At this point, this case has been pending for roughly two years, and expert discovery is otherwise complete. Although plaintiff submits that she only needs 30 days to provide a new damages estimate, [Dkt. 49] at 2, State Farm would have to depose plaintiff's new expert, rebut the new expert report, revisit its existing expert reports, and the case would be further delayed. On the other hand, however, the Court has not yet set a briefing schedule for dispositive motion practice, nor has it set a trial date. Thus, the schedule could be adjusted to accommodate additional expert discovery proceedings without disrupting existing pretrial deadlines or

---

parties' dispute regarding plaintiff's failure to produce Babst's materials related to a prior roof claim, and plaintiff has consistently touted Babst as an individual with knowledge about this case. Thus, the loss of Babst as both a fact and expert witness only complicates things further by depriving State Farm of the ability to learn facts from an individual presented as a material witness.

briefing. On balance, then, the Court concludes that the third *Pennypack* factor is neutral.

Fourth, the bad faith or willfulness factor weighs against permitting plaintiff to serve an expert report out of time, largely for the same reasons the Court has already given above. *See supra* Section III.A. Plaintiff knew or should have known of Babst's potential unavailability well before the deadline to serve affirmative expert reports, but failed to timely request an extension of that deadline or for leave to secure a new expert. Further, plaintiff has offered no credible justification for failing to comply with the scheduling order. *Motamed v. Chubb Corp*., Civ. No. 15-7262 (AET), 2020 WL 7227252, at *4 (D.N.J. Mar. 11, 2020) (holding that "plaintiff's failure to comply with the Court's Scheduling Order" amounted to willfulness). Additionally, plaintiff knew that both State Farm and the Court relied on her representation that Babst would be available for deposition during expert discovery—the Court, in order to resolve the dispute regarding plaintiff's failure to produce Babst's materials related to a prior roof claim; and defendants, in order to probe Babst on the information that was not produced. This, coupled with plaintiff's utter lack of urgency with which she dealt with this issue, also leads the Court to conclude that plaintiff's failure to abide by the scheduling order was willful. The fourth *Pennypack* factor thus weighs against granting plaintiff's request.

Fifth and finally, plaintiff has not demonstrated that an expert damages report is critical to her case. Plaintiff asserts in a conclusory manner that if she is "unable to produce a new estimate, [her] case would be significantly harmed"

because "[t]he majority of [her] damages . . . are included in [ ] Babst's damages estimate." [Dkt. 49] at 1. The Court agrees with State Farm, however, that plaintiff can still support her damages theory using, for instance, her own "testi[mony] as to the repairs she performed at the property. . . the contracts and receipts produced in discovery, and . . . [the testimony of] her contractors as fact witnesses." [Dkt. 50] at 11. The Court is not persuaded that the damages estimate is as critical as plaintiff claims. *Faiella*, 341 F.R.D. at 564-65 (holding that the fifth *Pennypack* factor weighed in favor of striking fact discovery amendments where "there ha[d] been no showing that any of the [ ] discovery at issue [wa]s critical.").

Moreover, the Court again notes that Babst's unresponsiveness was not raised until several weeks after the deadline to serve affirmative expert reports passed, and it was State Farm, not plaintiff, who first brought the issue to the Court's attention. And plaintiff did not specifically request leave to file a new report until the telephone status conference with the Court on August 24, 2026, and even then, the request was only made "in response to [State Farm's] request for an [o]rder barring Mr. Babst from testifying at trial." [Dkt. 50] at 9-10. Thus, plaintiff's own conduct appears to undercut her argument that her case will be "significantly harmed," [Dkt. 49] at 1, if she is not permitted to serve a new expert report: If an expert damages report was so critical to her case, she would have made much greater efforts to obtain a new expert before the deadline to serve affirmative expert reports, or at least request an extension before that deadline expired.

The Court can, of course, appreciate the benefit of having an expert analyze and quantify plaintiff's damages. But given the availability of other evidence and the circumstances surrounding plaintiff's belated request, the Court concludes that plaintiff has "not shown that the excluded evidence is of sufficient importance to outweigh the other *Pennypack* factors." *Santiago v. Bos. Sci. Corp.*, Civ. No. 21-11696 (SDA), 2026 WL 2575488, at *6 (D.N.J. Aug. 31, 2026) (barring plaintiffs' economic expert even though he "[wa]s vital to their lost wage claim" because they "c[ould] still testify about [their] lost wages; [they] just w[ould] not have an expert to analyze and quantify those lost wages," among other things).[7]

*

Three *Pennypack* factors weigh decisively against granting plaintiff's request, and two factors are, at most, neutral. Thus, even under *Pennypack*, the significant prejudice, plaintiff's disregard of the scheduling order without adequate explanation or justification, and the nonessential nature of the expert report, all confirm the Court's conclusion that plaintiff has not shown good cause to serve an expert report on valuation and damages out of time.

---

[7] The cases that plaintiff relies on, *Alberts v. Bumgardner*, Civ. No. 13-5538 (JBC), 2018 WL 5294512 (D.N.J. Oct. 25, 2018) and *ZF Meritor*, 696 F.3d 254, are factually distinguishable from this case and do not warrant a different outcome.

## IV. Conclusion

For the reasons set forth above,

IT IS on this 5th day of November, 2026,

**ORDERED** that plaintiff's request for leave to serve an expert report on valuation and damages out of time [Dkt. 49] is DENIED; and it is further

**ORDERED** that defendant's request to bar William Babst from testifying at trial as either a fact or expert witness, [Dkt. 50] at 12, is denied without prejudice. The Court will revisit this request, if necessary, at a later juncture.

J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE